UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

THOMAS P. JOHNSTON,

    Plaintiff,

vs.

FIRST PREMIER BANK,

    Defendant.

Case No. 1:17-cv-00189

Dlott, J.
Bowman, M.J.

**REPORT AND RECOMMENDATION**

This civil action is now before the Court on Defendant First PREMIER Bank's ("Defendant") second motion to compel arbitration and dismiss Plaintiff Thomas P. Johnston's ("Plaintiff") *pro se* Complaint. (Doc. 14). For the reasons discussed below, it is recommended that Defendant's second motion (Doc. 14) be GRANTED.

**I.    Background and Facts**

When considering a motion to compel arbitration, "courts treat the facts as they would in ruling on a summary judgment motion, construing all facts and reasonable inferences that can be drawn therefrom in a light most favorable to the nonmoving party." *Raasch v. NCR Corp.*, 254 F. Supp. 2d 847, 851 (S.D. Ohio 2003); *see also Ackison Surveying, LLC v. Focus Fiber Solutions, LLC*, Case No. 2:15-cv-2044, 2016 WL 4208145 (S.D. Ohio Aug. 10, 2016) (following *Raasch*). Therefore, the undersigned will look to the documents provided by the parties to lay the factual foundation and will construe those facts and any reasonable inferences that can be drawn therefrom in the light most favorable to Plaintiff in the analysis that follows.[1]

---

[1] Drawing reasonable inferences in favor of the nonmoving party does not mean that a court must ignore contrary evidence or the lack of evidence. The nonmoving party still must set forth "specific facts showing

1

This matter arises out of the credit reporting of a First PREMIER credit card account held in Plaintiff's name. Plaintiff's First PREMIER credit card was applied for electronically via Defendant's website in 2011. (Doc. 14-1, PageId 77).[2] The First PREMIER Credit Card Application that was completed included certain initial disclosures. (*Id.*). Included in those initial disclosures was an Arbitration Notice stating, *inter alia*, that if issued a Credit Card, the Credit Card Contract would contain a binding arbitration provision and that any dispute "relating to your Credit Card Contract" would be resolved by binding arbitration. (*Id.*).

Defendant opened a credit card account for Plaintiff that had the last four digits of 5971. (*Id.*). Defendant sent Plaintiff a new credit card and a copy of the Credit Card Contract and Account Opening Disclosures (the "Credit Card Contract"). (*Id.*, PageId 77-78). The Credit Card Contract established the terms and conditions of Plaintiff's account with Defendant and included an agreement to arbitrate "any claim, dispute or controversy . . . arising out of or relating in any way to this Contract, this Provision . . ., your Credit Account, any transaction on your Credit Account and our relationship[,]" including claims based in "statutory law (federal and state)[,]" with the American Arbitration Association or a mutually agreed arbitration organization pursuant to the

---

that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). It is not enough to show that some hypothetical doubt exists as to the material facts. *Matsushita,* 475 U.S. at 586. Further, even though a *pro se* litigant is given some leeway in prosecuting his case, his *pro se* status does not exempt him from the requirement that he set forth sufficient evidence and information to show his case is actionable in this Court. *Moore v. Holbrook*, 2 F.3d 697, 704 (6th Cir. 1993).
[2] Document 14-1 is the Affidavit of Julie K. Gilson that Defendant submitted in support of its second motion to compel. Contrary to Plaintiff's assertion that the affidavit cannot be considered because the affiant was not employed by Defendant in 2011 (Doc. 15, PageId 91), the affidavit plainly reflects that the affiant held her current position in 2011 and that she has the requisite knowledge of Defendant's practices and records to testify to the same (Doc. 14-1, PageId 76-77, Affidavit of J. Gilson, ¶¶ 2-8) (stating she has been employed as the Director of Business Communications for PREMIER Bankcard, LLC, the servicing entity for First PREMIER Bank, for 26 years and that she is familiar with the practices and documents of First PREMIER related to their individual credit card accounts).

Federal Arbitration Act, 9 U.S.C. §§ 1-16. (*Id.*, PageId 78, 86). Although the arbitration provision specifies a right to opt out within 30 days, Defendant did not receive an opt-out notice for the account. (*Id.*, PageId 79). The Credit Card Contract also indicates that it becomes effective upon the earlier of the first purchase made on the credit card or after 30 days from the date the credit card is issued absent a written notice to cancel. (*Id.*, PageId 78, 86)*.* Purchases were made using Plaintiff's credit card. (*Id.*, PageId 78). Billing statements related to the use of the credit card were sent to Plaintiff at 4137 Club View Drive, Cincinnati, Ohio 45209-1414. (*Id.*).

On February 21, 2017, Plaintiff initiated this action in the Hamilton County, Ohio Municipal Court based on his allegations that Defendant violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. 1681, *et seq.* and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. 1692, *et seq.* (Doc. 5, PageId 14). Plaintiff's claims focus on the credit reporting of his account. (*Id.*). Defendant subsequently removed Plaintiff's case to this Court. (Doc. 1).

On May 8, 2017, Defendant filed a motion to compel arbitration with the Court based on the arbitration agreement and contract terms for the account at issue. (Doc. 10). On May 19, 2017, the Court and the parties participated in a telephonic scheduling conference. During the conference, Plaintiff stated that he possesses documents demonstrating that the First PREMIER credit card at issue was opened fraudulently. Based on Plaintiff's representation, this Court denied Defendant's motion to compel arbitration on June 12, 2017. (Doc. 12). However, the Order indicated that "if Plaintiff fails to produce such documentation and/or should those representations prove to be inaccurate[,] Defendant may refile the motion [to compel arbitration]." (*Id.*, PageId 49 fn.

1). Thereafter, Plaintiff filed a response to which he attached documents that he claims support his contention the credit card at issue was opened fraudulently. (Doc. 13). Those documents include an IRS Identify Theft Affidavit revised on April 2016 with a signature date of November 2011, an undated Identity Theft Victim's Complaint and Affidavit form, an Offense/Incident Report that includes a web address of http://www.creativetemplate.net/wp-content/uploads/2016/01/Blank-Police-Report Templat... along with an access date of February 6, 2017, several pages from a March 10, 2014 Equifax credit report that include a tagline for a First PREMIER account opened on February 17, 2011 and closed at the consumer's request that had a balance of $420.00 past due as of July 2011, and letters from 2009 relating to a Capital One fraud investigation for Stacey Baker. (Doc. 13, PageId 52-62).

Now before the Court is Defendant's second motion to compel arbitration wherein Defendant contends that documents provided by Plaintiff do not support his claim that the credit card at issue was opened fraudulently and that an order compelling arbitration is appropriate. (Doc. 14, PageId 64-74). Plaintiff has filed a response in opposition, arguing that Defendant cannot show he signed or otherwise agreed to arbitration because he is the victim of identity theft. (Doc. 15, PageId 88-90). Plaintiff again attaches the documents he claims reflect the credit card at issue was opened fraudulently, providing additional explanations for the same. (Doc. 15-1, PageId 104-14). He also raises additional arguments pertaining to Ohio Usury Law, the FDCPA, the FCRA, and the use of courts for resolution of consumers' legal rights, which he supports by reference to a case against First PREMIER, articles about First PREMIER, and an article about consumer arbitration. (*Id.*, PageId 94-103). In its reply, Defendant

4

reiterates its position that Plaintiff has failed to demonstrate he was the victim of identity theft and contends that the additional arguments raised by Plaintiff are immaterial to the Court's consideration of whether to compel arbitration. (Doc. 16, PageId 116-19). Without leave of Court, Plaintiff filed a sur-reply in which he reiterates arguments made in his opposition brief. (Doc. 17, PageId 123-24).

II.     **Analysis**

Defendant moves to compel arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.* (Doc. 14, PageId 68). The FAA reflects a strong federal policy favoring arbitration. *Decker v. Merrill Lynch, Pierce, Fenner & Smith*, 205 F.3d 906, 911 (6th Cir. 2000). It "was designed to override judicial reluctance to enforce arbitration agreements, to relieve court congestion, and to provide parties with a speedier and less costly alternative to litigation." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000). Pursuant to the FAA, a written agreement to arbitrate disputes "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for revocation of any contract." 9 U.S.C. § 2. "[A]ny doubts regarding arbitrability should be resolved in favor of arbitration." *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 451 (6th Cir. 2005) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)).

Before compelling arbitration pursuant to a contractual arbitration provision, however, the Court must make four threshold determinations:

> first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must

5

determine whether to stay the remainder of the proceedings pending arbitration.

*Glazer*, 394 F.3d at 451 (quoting *Stout*, 228 F.3d at 714) (internal quotations omitted). Upon a finding of arbitrability, the Court must order the parties to proceed to arbitration in accordance with the terms of the agreement. 9 U.S.C. § 4. "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Financial Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000).

**A. The parties agreed to arbitration.**

Defendant argues that Plaintiff's issuance and use of the First PREMIER credit card constituted acceptance of the terms of the Credit Card Contract, including the arbitration provision. (Doc. 14, PageId 70-72). Defendant indicates that it also sent billing statements for the credit card to Plaintiff at his home address. (Doc. 14-1, PageId 78). Defendant claims that the documents upon which Plaintiff relies are irrelevant, unauthentic, and fail to demonstrate identity theft with respect to the First PREMIER account. (Doc. 14, PageId 70-72; Doc. 16, PageId 118-19). Plaintiff's arguments focus primarily on the absence of a signature or other form of identification produced by Defendant to show he agreed to the Credit Card Contract and on the documents he claims support a finding of identity theft. (Doc. 15, PageId 88-91; Doc. 17, PageId 122-24).

Before sending a case to arbitration, a court must determine that a valid agreement to arbitrate exists. 9 U.S.C. § 2; *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 450 (6th Cir. 2005). "An arbitration agreement may be voided for the same reasons for which any contract may be invalidated, including forgery, unconscionability, and lack of consideration." *Glazer*, 394 F.3d at 450 (citing *Fazio v. Lehman Bros., Inc.*, 340 F.3d

396, 393 (6th Cir. 2003)). In making this determination, courts generally consider the applicable state law concerning contract formation. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Jenkins v. Fifth Third Bank*, No. 1:16-cv-976, 2017 WL 3605357, at *3 (S.D. Ohio Aug. 22, 2017).

In Ohio, the State in which Plaintiff disputes arbitrability, "[a] creditor need not produce a signed credit card application to prove the existence of a legally binding agreement." *Heiges v. JP Morgan Chase Bank, N.A.*, 521 F. Supp. 2d 641, 647 (N.D. Ohio 2007) (citing *Assett Acceptance LLC v. Davis,* No. 2004CA00054, 2004 WL 2940747, at *2–5 (Ohio Ct. App. Dec. 13, 2009)). "Credit card agreements are contracts whereby the issuance and use of a credit card creates a legally binding agreement." *Id.* (quoting *Bank One, Columbus, NA v. Palmer*, 579 N.E.2d 284, 285 (Ohio App. Ct. 1989)) (internal quotations omitted). South Dakota law, which is the governing law set forth in the arbitration provision of the Credit Card Contract, is similar. *Masteller v. Champion Home Builders,* 723 N.W.2d 561, 565 (S.D. 2006) (stating "[a]n offeree that takes the benefit of services offered is bound by the terms of the offer if the offeree had a reasonable opportunity to reject them" (internal quotations omitted)); S.D.C.L. § 53-3-5 ("A voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it so far as the facts are known or ought to be known the person accepting.").

Considering the foregoing, the absence of Plaintiff's signature for the Credit Card Application or the Credit Card Contract is not determinative of whether the parties agreed to arbitration. The pivotal issue is whether the evidence shows Plaintiff was issued and used the credit card from First PREMIER after notice of the arbitration

7

provision. Defendant has submitted affirmative evidence that an account was opened for Plaintiff, that the credit card was used after the Credit Card Contract plainly referencing and containing the arbitration provision had been sent to Plaintiff, and that it never received a written opt-out notice from Plaintiff. It also submitted evidence that it sent billing statements for the credit card to the same address used by Plaintiff in this action. None of the documents submitted by Plaintiff undermine this evidence.

While Plaintiff opposes Defendant's evidence by submitting evidence generally relating to his identity theft argument, the undersigned cannot reasonably infer from that evidence that Plaintiff was the victim of identity theft in relation to the First PREMIER credit card. As Defendant points out, Plaintiff's evidence does not demonstrate he was the victim of identity theft, is lacking authenticity, and/or is irrelevant. Plaintiff's opposition otherwise consists of only unsworn, speculative, and conclusory statements relating to the issue of identity theft.

The letters submitted by Plaintiff from Stacey Baker's fraud investigation with Capital One are from 2009, two years before the First PREMIER account was opened. They do not reference Plaintiff or any alleged identity theft related to Plaintiff in any way. Nor do they otherwise bear any relationship to the First PREMIER credit card. Yet, even accepting as true that Plaintiff was the victim of identity theft along with Ms. Baker in 2009, that fact viewed together with the additional documentation Plaintiff provides still does not reasonably lead to the conclusion that the 2011 credit card was fraudulently opened.

Plaintiff's purported affidavits of identity theft do not bear any reasonable relationship to the First PREMIER credit card nor do they reflect genuine reports of

8

identity theft. One of the purported affidavits is an online form that has been manually completed. That affidavit is unsigned and undated. There is no indication it has been submitted to an official agency as an actual report of identity theft. It also is entirely void of any details relating to the alleged identity theft or the First PREMIER account.

The other is an IRS identity theft affidavit that likewise is void of details regarding the First PREMIER account in relation to the alleged identity theft. The signature on that form is dated November 2011; however, the form was revised in April 2016, which makes it impossible for Plaintiff to have signed it in 2011. Even accepting Plaintiff's unsworn claim in his briefing that the signature date of November 2011 on the form was not the date he claims to have reported the identity theft but instead is the "offense date" (Doc. 15-1, PageId 104), that date still does not align with the alleged incidents of identity theft relied upon in his briefings (i.e., it is after the alleged 2009 identity theft with Ms. Baker and after the opening and use of the credit card at issue in early to mid-2011). For there to be any connection between the affidavit and the First PREMIER credit card at all, it would be necessary to accept Plaintiff's additional unsworn statement that suggests the November 2011 signature date coincides with the date he first "noticed the incident" (Doc. 15, PageId 87) and to infer that Plaintiff is referring to the date he first realized the First PREMIER credit card had been opened in his name. Yet, Plaintiff still could not have filled out this form until at least April 2016, which is more than four years after he claims to have noticed the purportedly fraudulent First PREMIER credit card and more than two years after the tagline for a First PREMIER credit card appears on an Equifax credit report he provided. In other words, this form fails to reflect that Plaintiff disputed the First PREMIER account at or anywhere near the

9

time he claims he first learned of it. Plaintiff also has provided no evidence to indicate that this form was submitted to an agency as an official report of identity theft or that any action was taken in response to the filing of the form. The tenuous relationship between this form, the alleged identity theft, and the First PREMIER credit card is insufficient to create a genuine factual dispute on whether the First PREMIER credit card was opened fraudulently.

As for the "Offense/Incident Report," it is a blank template form completed on or after February 6, 2017, just prior to the initial filing of this lawsuit in state court and years after the alleged identity theft incidents and his alleged notice of the same. The form identifies the alleged identity theft offense date as "unknown," in contrast to the claims about the offense date in the IRS affidavit. Plaintiff admits this is not an original police report about the alleged identity theft (Doc. 15-1, PageId 108) and fails to identify when or if an actual police report ever was made.[3] If this report was made, it still contains no content that even slightly conveys information concerning identity theft in relation to the First PREMIER credit card.

Finally, the tradeline on the Equifax credit report does not support Plaintiff's claim that the First PREMIER credit card was opened or used fraudulently. On that credit report, the First PREMIER credit card is shown as being a charge-off account that was delinquent as of July 2011 and as being closed at the consumer's request. This information does nothing to demonstrate an improper origination or utilization of the credit card account.

Having viewed the evidence and any reasonable inferences therefrom in the light

---

[3] The "Date Reported" box contains the following notation: "3-22[.]" (Doc. 15-1, PageId 108). There is no reference made to the year in which the alleged report was made.

most favorable to Plaintiff as the nonmoving party, the undersigned finds that the evidence sufficiently demonstrates the parties agreed to arbitration.

### B. The arbitration provision applies to this dispute.

Plaintiff's Complaint asserts claims under the FDCPA and the FCRA. (Doc. 5, PageId 14). In his response in opposition to Defendant's second motion, he also raises issues relating to Ohio Usury Law. (Doc. 15, PageId 88). Defendant contends that claims under the FDCPA, FCRA, and Ohio Usury Law fall within the scope of the arbitration provision. (Doc. 14, PageId 72-73; Doc. 16, PageId 120). Plaintiff does not dispute the scope of the arbitration provision, but instead attaches documents regarding Defendant's purported business practices to support his arguments on the merits. (Doc. 15, PageId 88-91; Doc. 15-1, PageId 101-03; Doc. 17, PageId 122-24).

Upon review, all of Plaintiff's claims unequivocally fall within the arbitration provision of the Credit Card Contract. The arbitration provision broadly defines claim to mean "any claim, dispute or controversy by either you or us, arising out of or relating in any way to this Contract, . . . your Credit Account, any transaction on your Credit Account and our relationship[.]" (Doc. 14-1, PageId 86). It further indicates that "[a]ll Claims are subject to arbitration, regardless of legal theory and remedy sought, including but not limited to claims based in . . . statutory law (federal and state)[.]" (*Id.*). Where, as here, the arbitration clause is broad, "only an express provision excluding a specific dispute, or the most forceful evidence of a purpose to exclude the claim from arbitration, will remove the dispute from consideration by arbitrators[.]" *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 677 (6th Cir. 2003) (internal quotations omitted). As the arbitration provision does not contain

language excluding the asserted claims and there is no evidence that otherwise suggests an intent to exclude such claims, the adjudication of Plaintiff's claims falls within the province of the arbitrator.

### C. Plaintiff's federal statutory claims are arbitrable.

Defendant argues that nothing precludes Plaintiff's FDCPA and FCRA claims from being subject to the arbitration provision in the Credit Card Contract. (Doc. 14, PageId 73; Doc. 16, PageId 120). In response, Plaintiff attaches documents to argue that Defendant cannot seek arbitration in this matter because the National Arbitration Forum no longer hears consumer disputes. (Doc. 15, PageId 88-91; Doc. 15-1, PageId 95-98; Doc. 17, PageId 122-24).

Courts routinely have held that claims under the FDCPA and FCRA can appropriately be resolved through arbitration. *See, e.g.*, *Hilton v. Midland Funding, LLC*, 687 F. App'x 515 (6th Cir. 2017) (affirming dismissal of a FDCPA claim that was subject to an arbitration provision); *Hodson v. Javitch, Block & Rathbone, LLP*, 531 F. Supp. 2d 827, 831 (N.D. Ohio 2008) ("Congress did not intend FDCPA claims to be non-arbitrable."); *McMahan v. Byrider Sales of Indiana S, LLC*, No. 3:17-CV-00064, 2017 WL 4077013, at *4 (W.D. Ky. Sept. 14, 2017) ("There is no indication that Congress intended to preclude the arbitration of FCRA claims and courts have held that such claims are arbitrable."); *Mann v. Equifax Information Servs.*, No. 12-cv-14097, 2013 WL 3814257, at *9 (E.D. Mich. July 22, 2013) (holding that an arbitration agreement applied to plaintiff's FCRA claim); *Gardner v. Randall Mortg. Servs.*, No. C-2-06-0612, 2007 WL 1432047, at *6 (S.D. Ohio May 14, 2007) (granting motion to compel arbitration of FCRA claims). As the arbitration provision refers the claims to the American Arbitration

Association, Plaintiff's argument regarding the National Arbitration Forum is immaterial. Accordingly, the undersigned finds that Plaintiff's federal statutory claims under the FDCPA and FCRA are arbitrable.

### D. A stay of the proceedings is not warranted.

The FAA requires a court to stay proceedings pending arbitration only "on application of one of the parties." 9 U.S.C. § 3. Vague references to a stay do not constitute a request for a stay. *Hilton v. Midland Funding, LLC*, 687 F. App'x 515, 519 (6th Cir. 2017) (citing *Knall Beverage, Inc. v. Teamsters Local Union No. 293 Pension Plan*, 744 F.3d 419, 424 (6th Cir. 2014); *Travelers Prop. Cas. Co. of Am. v. Hillerich & Bradsby Co.*, 598 F.3d 257, 273 (6th Cir. 2010)). Further, a stay is not necessary and dismissal is appropriate when all of the issues raised in the district court must be submitted to arbitration. *Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000); *Hensel v. Cargill, Inc.*, 198 F.3d 245, 1999 WL 993775, at *4 (6th Cir. 1999) (table decision).

Here, a stay of the proceedings is not warranted. Neither party has requested a stay and all of the claims asserted herein are subject to arbitration. Accordingly, the undersigned recommends dismissal of Plaintiff's Complaint with prejudice.

### III. Conclusion

Consistent with the foregoing analysis, **IT IS RECOMMENDED** that Defendant's second motion to compel arbitration (Doc. 14) be **GRANTED** and that Plaintiff's Complaint be dismissed with prejudice.

*s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| THOMAS P. JOHNSTON, | Case No. 1:17-cv-00189 |
| Plaintiff, | |
| | Dlott, J. |
| vs. | Bowman, M.J. |
| FIRST PREMIER BANK, | |
| Defendant. | |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).